**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SB, | No. CV-20-01842-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff S.B.'s appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 18). The appeal is fully briefed (Doc. 18, Doc. 21, Doc. 22), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from August 1, 2004 to December 31, 2006 and whether the ALJ committed legal error in his analysis. (Doc. 18 at 1).

**a.  Factual Overview**

Plaintiff was 53 years old at the time of the hearing and has a college education. (Doc. 17-3 at 76–77). She has past relevant work experience as a compliance auditor, a chorus manager, and an administrative assistant. (Doc. 18 at 2).

Plaintiff filed her relevant social security disability claim on September 22, 2016,

for disabilities beginning on August 1, 2004.¹ (Doc. 17-3 at 18). Plaintiff was last insured for Disability Insurance Benefits on December 31, 2006. (*Id.*) As relevant here, Plaintiff alleges disabilities including post-traumatic stress disorder ("PTSD"), Androphobia, Panic Disorder, Acute Stress Disorder, Social Anxiety Disorder, and Rape Trauma. (Doc. 18 at 2–3). On December 26, 2019, an ALJ denied Plaintiff's claim. (Doc. 17-3 at 15). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the SSA's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive, and an ALJ need not evaluate a claimant's application at each subsequent step if a dispositive finding is made at an earlier one. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and

---

¹ The Court notes that Plaintiff appears to have filed a total of five applications for Disability Insurance Benefits and two applications for Supplemental Social Security Income all alleging different disability onset dates. (*See* Doc. 17-3 18–19). This appeal is from Plaintiff's application filed on September 22, 2016 which is entitled to a protective filing date of June 30, 2016. (*Id.* at 18).

- 2 -

aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date through her date last insured. (Doc. 17-3 at 24).

At the second step, the ALJ determined that Plaintiff had not provided sufficient evidence to establish a medically determinable impairment on or before her date last insured, December 31, 2006. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled on or before her date last insured. (*Id.* at 28).

Because the ALJ found Plaintiff not disabled at the second step, the ALJ did not reach the third, fourth, and fifth steps.

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v, Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises two claims of error: (1) the ALJ erred in failing to consider objective medical evidence of S.B.'s medical conditions on the grounds that the evidence was rendered after her date last insured; and (2) the ALJ erred in giving no weight to the medical opinions of Plaintiff's treating physicians because the treating relationship began after Plaintiff's date last insured. (Doc. 18 at 6–7). The Court addresses each in turn.

### a. Objective Medical Evidence

Plaintiff first argues that the ALJ committed legal error by failing to consider the objective medical evidence of Plaintiff's disability on the grounds that the evidence post-

dated her insured status. (Doc. 18 at 7–10). Although Plaintiff's date last insured is December 31, 2006, Plaintiff submitted medical evidence of her disability in the form of medical records and medical opinion statements dating back only to 2013. (Doc. 17-3 at 25). Plaintiff also testified "to a history of physical, mental, and sexual abuse since childhood." (*Id.* at 24). Plaintiff's records include observations and medical opinions from nearly 20 medical sources dating back to 2013, including treating physicians Dr. Lynn Turner and Dr. Shore Armani. (*Id.* at 24–27). In particular, Plaintiff points to Dr. Turner's July 2019 letter to the ALJ stating:

> [S.B.'s] abuse, neglect and rape, and her resulting complex PTSD, is more dire and severe than any other client in my 30 years of working with victims of sexual abuse. Her responses to my questions in body language, physical reactions, and verbal responses over 5 years of psychotherapy left me in no doubt that her horrible and extreme life history was true as she related it to me.

(Doc. 18 at 3, citing Tr. 1178–79). Plaintiff further points to "multiple and repeated abnormalities that [she] exhibited in visits with her treating and examining providers" after she began treatment in 2013, including her "guarded attitude, agitated motor activity, labile affect, anxious mood, and soft speech" and "loosening of associations, persecutory delusions, depersonalization of herself, impaired judgment and insight or disorientation to person and place" noted by Dr. Turner during a September 2016 visit. (*Id.* at 7–8). Plaintiff contends that such evidence establishes the existence of a disability on or before December 31, 2006. (*Id.* at 9).

At step two of the SSA's five-step evaluation process, the burden is on the claimant to establish the existence of a medically determinable impairment prior to her date last insured. 20 C.F.R. §§ 404.1512, 404.1521; *see also Petty v. Astrue*, 550 F.Supp.2d 1089, 1097 (D. Ariz. 2008). Section 404.1521 requires that "a physical or mental impairment [] be established by objective medical evidence from an acceptable medical source" and explicitly excludes a claimant's "statement of symptoms, a diagnosis, or a medical opinion" from consideration. *Id.* § 404.1521. While a claimant's symptoms and medical source opinions are relevant to an overall determination of disability, establishing a

medically determinable impairment at step two requires that an impairment "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Such anatomical, physiological, or psychological abnormalities must be observed apart from the claimant's symptom statements. *Id.* § 416.902 (definitions); *see also id.* § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment[] which…would lead to the conclusion that you are disabled.").

"Because [Plaintiff] must establish that she became disabled on or before the expiration of her insured status, she must demonstrate that each condition was severe on or before" December 31, 2006. *See Petty*, 550 F.Supp.2d at 1097 ("There is no dispute that [claimant] currently suffers from depression, but rather the issue is whether its onset was prior to March 31, 1997."); *see also* 20 C.F.R. § 404.315. However, as noted by the ALJ here, "there is no evidence of any clinical observation or treatment by an acceptable medical source between 2004 and 2013." (Doc. 17-3 at 25). Plaintiff asserts that she was unable to obtain objective medical evidence between 2004 and 2013 due to her being "held against her will and sexually assaulted by a number of individuals." (Doc. 17-3 at 24). But as noted by the ALJ, Plaintiff is unable to provide evidence to corroborate that assertion outside of her own testimony. (Doc. 17-3 at 27).

Plaintiff instead argues that her medical records from 2013 to the present day include objective medical evidence that is relevant to whether she had a medically determinable impairment on or before December 31, 2006. (Doc. 18 at 7–9). Plaintiff relies on *Petty v. Astrue*, *Lester v. Chater*, and *Smith v. Bowen* for her assertion that the ALJ erred by not considering her post-date last insured medical records in making his disability determination. (*Id.* at 9). In response, Defendant argues that those cases are distinguishable, and Plaintiff has failed to meet her burden. (Doc. 21 at 4, 9–12).

In *Petty*, another Judge in this district held that "although contemporaneous

evidence is preferred, a claimant may offer retrospective diagnoses that relate back to the insured period to show disability" at step two of the SSA's five-step evaluation process. *Petty*, 550 F.Supp.2d at 1097. The *Petty* decision itself relied on *Lester* and *Smith*, which both held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). However, *Petty*, *Lester*, and *Smith* are decisions rendered prior to the change in social security regulations regarding the evidence available to establish a medically determinable impairment at step two. To the extent that *Petty*, *Lester*, and *Smith* hold that medical opinions and diagnoses are relevant to determine an impairment at step two, that has been expressly foreclosed by the text of § 404.1521. 20 C.F.R. § 404.1521 ("We will not use your statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment[]."). Instead, as discussed above, the Court finds that only the objective medical evidence in Plaintiff's medical records can be relevant to whether she had a medically determinable impairment on or before her date last insured. *See id.* § 404.1521.

While the ALJ and the Court are not limited to objective medical evidence collected on or before the date last insured, any evidence provided after Plaintiff's date last insured should suggest the existence of an impairment on or before to her date last insured. *D.K. v. Kijakazi*, No. 20-CV-07821-LB, 2021 WL 3856696 at *5 (N.D. Cal. Aug. 30, 2021) ("Later-acquired objective medical evidence can be used to show the existence of a medically determinable impairment as of an earlier date, *so long as the earlier onset can be reasonably inferred from the objective medical evidence*.") (emphasis added).

Contrary to Plaintiff's arguments, the Court does not find that the ALJ based his disability determination solely on the lack of contemporaneous objective medical evidence. Instead, the ALJ reviewed the evidence in the record and properly determined that no reasonable inference could be drawn from the later-acquired objective medical evidence that Plaintiff's condition existed seven years earlier:

> Nothing in the evidence establishes that the existence of medically determinable impairments in 2013, in and of itself,

>establishes that any or all of those medically determinable impairments existed seven years earlier on or before the date last insured.

(Doc. 17-3 at 27). The Court agrees with the ALJ that the existence of an impairment seven years after Plaintiff's date last insured does not, by itself, prove a medically determinable impairment existed prior to December 31, 2006. As noted in the ALJ's opinion, Plaintiff did not provide any corroborating evidence for her claim of disability prior to 2013 and she stated definitively at the hearing that she would be unable to do so. (*Id.*)

Here, the ALJ's findings are supported by the complete lack of corroborating evidence in the record, and the Court does not find that the record evidence in the form of medical opinions relying on plaintiff's subjective statements compels a conclusion contrary to the ALJ's. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

Plaintiff next argues, as she did before the ALJ, that the SSA should have developed her claim further by obtaining expert testimony from a consulting medical examiner (Doc. 18 at 9–10), but the ALJ rejected her argument because such an expert "could not provide objective medical evidence establishing a medically determinable impairment on or before December 31, 2006." (Doc. 17-3 at 25). Both Plaintiff and Defendant make arguments based on Social Security Ruling 18-1p, a policy interpretation ruling regarding a claimant's established onset date.

Social Security Ruling 18-1p allocates discretion to ALJs to solicit testimony from a medical expert "if the ALJ needs to infer the date that the claimant first met the statutory definition of disability." S.S.R. 18-01p, at § I.B.2 ("The decision to call on the services of [a medical expert] is always at the ALJ's discretion."). However, the ALJ expressly rejected related arguments at the hearing, stating:

>The issue before me is not the claimant's onset date of disability (i.e., a determination made after a favorable determination at Step Three, Four, or Five of the disability

>process). Rather, the issue before me is whether a medically determinable impairment existed on or before the date last insured (i.e., a determination made at Step Two of the disability analysis).

(Doc. 17-3 at 26). The Court agrees with the ALJ that the question addressed by S.S.R. 18-1p is different; the threshold inquiry before the ALJ in this case was whether Plaintiff was disabled during the relevant period, not when Plaintiff's disability began. *See* S.S.R. 18-1p at 2. ("If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, *we then determine the claimant's EOD*.") (emphasis added).

Regardless of the applicability of S.S.R. 18-1p, as Defendant points out in its Answering Brief, an ALJ is not required to call upon a medical expert if the ALJ "can reasonably and confidently say that no reasonable medical advisor could infer that the disability began during a period for which the claimant lacked medical documentation," as the ALJ did in this case. (Doc. 21 at 13, *quoting Wellington v. Berryhill*, 878 F.3d 867, 875 (9th Cir. 2017)). The Court agrees with the ALJ's conclusion that a medical expert in this case could not help Plaintiff establish an impairment on or before December 31, 2006 where there is no objective medical evidence for the medical expert to review that would tend to suggest an impairment on or before that date. *See also Greenway v. Astrue*, 353 Fed.Appx. 88, 89–90 (9th Cir. 2009) (unpublished) (ALJ "was not required to call a medical expert because there were insufficient medical records from which a medical expert could reasonably have drawn the conclusion that [claimant's] onset date was prior to the date on which his insurance lapsed").

Thus, the Court finds that the ALJ's decision not to employ a medical expert to further develop the record was supported by substantial evidence and not made in legal error. Moreover, the ALJ discharged any duty to further develop the record by allowing Plaintiff to submit additional evidence at the close of the hearing prior to making his determination of disability. (Doc. 17-3 at 81–94); *See Petty*, 550 F.Supp.2d at 1102 ("The ALJ may discharge [the] duty [to develop the record further] in several ways, including:

…keeping the record open after the hearing to allow supplementation of the record.").

### b. Medical Opinions

Plaintiff first argues that the ALJ erred in discounting the medical opinions of treating physicians Drs. Turner and Armani solely because Plaintiff's treating relationship began after her date last insured. (Doc. 18 at 11). Plaintiff asserts "the ALJ found that 20 C.F.R. § 404.1521 'does not allow consideration' of medical opinions that post-date the period for disability in determining whether an impairment existed prior to the [date last insured]." (*Id.* at 11).

However, the Court disagrees with Plaintiff's characterization of the ALJ's reasoning. Instead, the ALJ reviewed the medical statements of both Dr. Turner and Dr. Armani and determined that their statements met the definition of a medical opinion under § 404.1527(a)(1), such that their statements cannot be used to establish a medically determinable impairment at step two, pursuant to § 404.1521. (Doc. 17-3 at 25–26); *see* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite your impairment(s), and your physical and mental restrictions.").

As discussed above, 20 C.F.R. § 404.1521 governs the evidence permissible to establish the existence of an impairment at step two of the SSA's five-step evaluation process. Section 404.1521 requires that "a physical or mental impairment [] be established by objective medical evidence from an acceptable medical source" and explicitly excludes a claimant's "statement of symptoms, a diagnosis, or a medical opinion" from consideration. *Id.* § 404.1521. While a claimant's symptoms and medical source opinions are relevant to an overall determination of disability, establishing a medically determinable impairment at step two requires that an impairment "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*.

The Court finds that the ALJ did not commit legal error in his decision to exclude

consideration of Dr. Turner's and Dr. Armani's medical opinions at step two where such evidence is clearly precluded by 20 C.F.R. § 404.1521. *See Bilby v. Schweiker*, 762 F.2d 716, 718 (9th Cir. 1985) ("Although a medical expert's opinion regarding disability is not binding on the ALJ, the ALJ must provide clear and convincing reasons for rejecting an uncontroverted medical opinion.").

Plaintiff next argues that the ALJ erred in discrediting Dr. Turner's and Dr. Armani's medical opinions regarding when Plaintiff's impairments first existed because those opinions were based solely on Plaintiff's own statements. (Doc. 18 at 12–13).

Even though the ALJ found that he was not allowed to consider Dr. Turner's and Dr. Armani's medical opinions in his determination based on § 404.1521, he reviewed those opinions and provided an additional reason for rejecting them:

> Even if considering the opinions of Drs. Turner and Armani in that way could support finding a medically determinable impairment at an earlier date last insured, I give those opinions no weight in determining whether a medically determinable impairment existed on or before the date last insured because, *as to when the medically determinable impairments identified in 2013, first existed, those opinions are necessarily based solely upon the claimant's statements*.

(Doc. 17-3 at 26–27) (emphasis in original). The ALJ further noted that there is no contemporaneous medical evidence, lay testimony or other evidence that would tend to corroborate the medical opinions other than Plaintiff's own testimony. (*Id.* at 27). The ALJ found that "[t]he claimant's own testimony of her symptoms and trauma on or before the date last insured cannot be used to establish a medically determinable impairment" under § 404.1521. (*Id.*) Plaintiff contends, without identifying any authority, that while § 404.1521 precludes her symptom testimony, it does not preclude "a claimant's statements regarding the *context or history* of her injury to establish a medically determinable impairment of its onset." (Doc. 18 at 12) (emphasis in original).

Regardless, when permissible, medical opinions are considered "together with the rest of the relevant evidence" in the record based on a set of factors, including the nature and extent of the source's relationship with the claimant, supportability, consistency with

the record as a whole, the source's medical specialization, and the source's familiarity with social security disability rules and regulations. 20 C.F.R. § 404.1527(b)–(c). With respect to supportability, more weight is generally accorded to source opinions with explanations that are supported by objective medical evidence in the record, including medical signs and laboratory findings. *Id.* § 404.1527(c)(3). An ALJ may properly reject a medical opinion if it lacks support from record evidence and is instead based only on a claimant's subjective testimony or from testing within their control. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ did not find any medical or lay evidence in the record to corroborate Dr. Turner's and Dr. Armani's opinions other than Plaintiff's subjective testimony, which the ALJ properly determined is insufficient to establish a medically determinable impairment, pursuant to § 404.1521. (Doc. 17-3 at 27); *see also* 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment[] which…would lead to the conclusion that you are disabled."). Contrary to Plaintiff's arguments, the ALJ is not simply choosing to disregard Plaintiff's treating physicians' opinions because those opinions postdate her date last insured or rely on her own statements. Instead, the ALJ reviewed the evidence in the record and was unable to find any corroborating evidence that would support the treating doctors' opinions that Plaintiff's current condition dates back to on or before December 31, 2006. Notably, Plaintiff admitted at the hearing that there is no way for her to obtain any evidence to corroborate her testimony. (Doc. 17-3 at 27).

Under these circumstances, the ALJ did not err by discounting Dr. Turner's and Dr. Armani's opinions regarding the date that Plaintiff became disabled because those opinions were entirely based on Plaintiff's own subjective allegations. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that an ALJ articulated sufficiently specific and legitimate reasoning for rejecting treating doctor's opinion where the opinion was "based almost entirely on the claimant's self-reporting" and the opinion did not offer

"any independent analysis or diagnosis").

In sum, the ALJ did not err by affording "no weight" to Drs. Turner and Armani's opinions because relying on those opinions to determine the existence of a medically determinable impairment at step two is expressly foreclosed. 20 C.F.R. § 404.1521 (excluding a claimant's statement of symptoms, diagnoses, or medical opinions from permissible evidence to establish a physical or mental impairment).

### c. Further Proceedings

Plaintiff requests a remand for computation of benefits under the Ninth Circuit's credit-as-true doctrine. (Doc 18 at 13–17). However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for a remand without considering the applicability of the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 5th day of November, 2021.

James A. Teilborg
Senior United States District Judge